UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

---

MOSHE ENBAR, *et al.*,                    Case No. 1:20-cv-22360-KMW

      Appellants,

 v.

Fred Goodstein, *et ux.*

      Appellee.

_____/

**<u>APPELLEE'S INITIAL BRIEF</u>**

**WEG AND MYERS, P.C.**
*Attorneys for*
*Defendants/Appellees*
Federal Plaza
52 Duane Street, 2nd Floor
New York, New York 10007
Telephone: (212) 227-4210
Facsimile: (212) 349-6702

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES**……………………………………………………………ii

**COUNTER-QUESTIONS PRESENTED** ............................................................................. 1

**PRELIMINARY STATEMENT** ........................................................................................ 1

**DEFENDANTS' STATEMENT OF MATERIAL FACTS** ................................................ 3

**PROCEDURAL HISTORY** .............................................................................................. 5

**ARGUMENT** ..................................................................................................................... 6

    **POINT I**

    THE BANKRUPTCY COURT CORRECTLY CONCLUDED THAT THE SETTLEMENT
    AGREEMENT DOES NOT BAR THE GOODSTEINS FROM PROSECUTING THE NEW
    YORK ACTION ................................................................................................................ 6

    **POINT II**

    THE COURT WAS CORRECT IN HOLDING THAT THE BANKRUPCTY COURT HAD
    NO AUTHORITY TO RELEASE THE GOODSTEINS' CLAIMS ...................................... 10

    **POINT III**

    THE BANKRUPTCY COURT DID NOT DEFER TO THE NEW YORK COURT, IT
    SIMPLY REACHED THE SAME, INESCAPABLE CONCLUSION ................................... 15

**CONCLUSION** ................................................................................................................ 20

i

# TABLE OF AUTHORITIES

Page(s)

Cases

*A.H. Robins Co., Inc. v. Piccinin,*
  788 F2d 994 (4th Cir. 1986) ...............................................................................13

*Buchwald v. The Renco Grp., Inc. (In re Magnesium Corp. of Am.),*
  399 B.R. 722 (Bankr. S.D.N.Y. 2009) ..................................................................9

*Hirsch v. Arthur Anderson & Co.,*
  178 B.R. 40 (D.Conn. 1994)..................................................................................8

*In re C.D. Jones & Co. Inc.,*
  482 B.R. 449 (Bankr. N.D. Fla 2012) ........................................................... 11, 12

*In re Cabrini Med. Ctr.,*
  2012 WL 2254386 (Bankr. S.D.N.Y. June 15, 2012) ...........................................8

*In re Conseco, Inc.,*
  305 B.R. 281 (Bankr. N.D. Ill. 2004) ..................................................................19

*In re FedPak Sys., Inc.,*
  80 F.3d 207 (7th Cir. 1995) .................................................................................19

*In re Flagship Healthcare, Inc.,*
  269 B.R. 721 (Bankr. S.D. Fla. 2001) ........................................................... 7, 11

*In re Hanks,*
  182 B.R. 930 (Bankr. N.D. Ga. 1995)..................................................................17

*In re Valdez Fisheries Development Assoc., Inc.,*
  439 F.3d 545 (9th Cir. 2006) ......................................................................... 17, 18

*In re Zwirn,*
  362 B.R. 536 (Bankr. S.D. Fla. 2007) .................................................................11

*Klingman,*
  158 B.R. 109 (N.D. Ill. 1993).......................................................................  11, 12

*Kokkonen v. Guardian Life Ins. Co. of America,*
  511 U.S. 375 (1994) ............................................................................................16

*Queenie, Ltd. V. Nygard Intl.,*
  321 F.3d 282 (2d Cir. 2003) ................................................................................15

*Securities Investor Protection Corporation v. Bernard L. Madoff Investment*
  *Securities LLC,*
  490 B.R. 59 (S.D.N.Y. 2013) ........................................................................ 14, 15

*Shafferman v. Queens Borough Pub. Library (In re JMK Constr. Grp., Ltd.),*
  502 B.R. 396 (Bankr. S.D.N.Y. 2013) ..................................................................8

*Zerand-Bernal Group, Inc. v. Cox*,
    158 B.R. 459 (Bankr. N.D. Ill. 1993) ...................................................................19

Statutes

28 U.S.C. Section 1334 ..........................................................................................16
Bankruptcy Code 546 .............................................................................................11
New York Debtor and Creditor Law §§ 276, 278-a, and/or 279 .............................4
Section 546(a) ........................................................................................................12

## COUNTER-QUESTIONS PRESENTED

1.      Did the Court below err in finding that the clear language of the Stipulation should control, and that therefore the Goodsteins' claims against the debtor were not extinguished?

2.      Did the Court below err in failing to find that the Goodsteins' judgments against Mr. Enbar are void?

These questions should be answered in the negative.

## PRELIMINARY STATEMENT

The instant appeal consists of a last-ditch effort to avoid the determination of the United States Bankruptcy Court for the Southern District of Florida, Miami Division, by Judge A. Jay Cristol, and its interpretation of its own Order, wherein it concluded that the Settlement Hearing that it presided over and the subsequent Order issued in connection with that Hearing, did not preclude the Defendants herein from continuing to pursue their action against other parties in an existing action being litigated in New York State Court.

Plaintiff's' instant appeal is nothing more than a continuation of the ongoing dilatory tactics and gamesmanship engaged in in his effort to avoid any consequences resulting from his scheme to convert a loan to an LLC to assets enjoyed by various of Plaintiff's family members.  In further carrying out this scheme, Plaintiff filed the instant adversary proceeding against Defendants in which

it seeks to enjoin them from pursuing their claims against Debtor Moshe Enbar's family members—all individuals who were the beneficiaries of a series of fraudulent conveyances which had the effect of making the LLC to whom Defendants loaned money judgment-proof.

The relief sought by Plaintiffs and the basis of said relief are in direct contradiction to the explicit language of the Stipulation Upon Order to which the Complaint and Motions refer. This Stipulation states: "The Stipulation shall be binding and upon and inure to the benefit of the Parties hereto and their respective successors and assigns. However, the Stipulation shall not be binding on any creditors, or otherwise affect the rights of any creditors, of the Estate." *See*, Docket No. 32, at Exhibit "B". The language in this Stipulation cannot be any clearer in that it does not bind or prevent any third-party creditors, including the Goodsteins, from enforcing their rights against others.

Further, as the Goodsteins were not party to that Stipulation or settlement, there would have been no authority for the Goodsteins' claims to be released, even if that was the purpose of the Stipulation, which it explicitly was not.

Plaintiffs also take issue with the New York Court's ability to determine whether the Stipulation released the Goodsteins claims, now arguing that New York did not have jurisdiction to make such a determination. However, not only is there no legitimate basis to contend that the New York State Court hearing the case lacks

jurisdiction, but, ironically, it was the Plaintiffs who affirmatively sought similar relief in the New York Court. It is obvious that they are only claiming a "lack of jurisdiction" is because they were unhappy with that Court's decision.

Lastly, Plaintiffs argue that the New York action should be stayed, pursuant to the Bankruptcy Code's automatic stay provisions. As discussed in detail below, the automatic stay does not apply to proceedings against non-bankrupt entities such as Adam Enbar and Melissa Benzel except in very limited circumstances which are not present at bar.

## DEFENDANTS' STATEMENT OF MATERIAL FACTS

On September 20, 2017, in the matter entitled In re: MOSHE ENBAR, Case No. 16-21262-AJC, in the United States Bankruptcy Court for the Southern District of Florida, Miami Division, Judge A. Jay Cristol issued an Order approving the trustee's Motion and Stipulation to Compromise Controversy (hereinafter the "Stipulation"). This Stipulation was entered into by and between the Settling Parties, Moshe Enbar, Linda Enbar, Adam Enbar and Melissa Benzel. *See*, Docket No. 32, at Exhibit "B"

The terms of the Stipulation were outlined in the September 19, 2017 Settlement Transcript for In re: MOSHE ENBAR Case No. 16-21262-AJC, in the United States Bankruptcy Court for the Southern District of Florida, Miami Division

(hereinafter the "Settlement Transcript"). *See*, Docket No. 32, at Exhibit "C." Present at this hearing was Mr. Angueira, the Chapter 7 Trustee in that case, and the debtor, Mr. Enbar. The Settlement Transcript made clear that, "this is an agreement between the trustee and debtor, and would have no affect on other parties, creditors, or interested parties…" *See*, Docket No. 32, at Exhibit "C."

Importantly, at the time that this Settlement was entered into, the Court was cognizant of the fact that the New York Action had already been initiated, on August 4, 2016, prior to the initial filing of the debtor's bankruptcy petition herein. On March 13, 2019 Defendants filed a motion to amend its complaint to *inter alia* add causes of action against Melissa Benzel. These causes of action were for Fraudulent Conveyance under New York Debtor and Creditor Law §§ 276, 278-a, and/or 279.. By Decision and Order dated November 1, 2019, *See*, Docket No. 32, at Exhibit "D", the New York Court granted Defendants' motion. In so doing, it rejected these same Plaintiffs' claim that the settlement in the Bankruptcy Court precluded the Goodsteins' motion to amend their complaint.

Notwithstanding the fact that the New York Court granted the amendment of the Defendant's complaint on November 1, 2019, it was not until January 28, 2020 that Plaintiffs herein commenced their Adversary Proceeding against Defendants, followed by the filing of a motion for summary judgment and motion for a preliminary injunction on May 1, 2020. *See* Docket Nos. 4 and 7. This procedural

4

posture, in and of itself, raises a question as to the motive behind the filing and of this appeal.

## PROCEDURAL HISTORY

The underlying Bankruptcy was filed as a voluntary Chapter 7 petition commenced by the Debtor through his former counsel, Christian J. Olsen, Esq. on August 16, 2016. Robert A. Angueira (the "Trustee") was appointed to serve as the Chapter 7 Trustee which was assigned Case No.: 16-21262-AJC (the "Main Action"). The Trustee's Motion and Stipulation to Compromise Controversy was so-ordered on September 21, 2017. See, Docket No. 32, at Exhibit B.

On January 13, 2017, the Goodsteins filed their Adversary Complaint which was assigned Adv. No.: 17-01018-AJC (the "Adversary Action"). *See* Adversary Action ECF Doc. No. 1. On or about January 17, 2017, this Court issued a Summons and an Order Setting Filing and Disclosure Requirements for Pretrial and Trial in the Adversary Action. *See* Adversary Action ECF Doc. No. 2.

On January 28, 2020 Plaintiffs filed the below adversary action under Adv. No.: 20-1028-BKC-AJC-A, seeking to enjoin the New York Action. On January 29, 2020, Plaintiffs filed their motion for preliminary injunction, and on January 30, 2020, they filed their motion for summary judgment. Both motions were denied by the appealed-from Order, dated May 26, 2020 (the "Decision").

**ARGUMENT**

**POINT I**

**THE BANKRUPTCY COURT CORRECTLY CONCLUDED THAT THE
SETTLEMENT AGREEMENT DOES NOT BAR THE GOODSTEINS
FROM PROSECUTING THE NEW YORK ACTION**

The contours of the Subject Settlement Agreement to which Plaintiffs seek to use as a sword against the Defendants, was outlined in the September 19, 2017 Settlement Transcript in front of Judge A. Jay Cristol. See, Docket No. 32, at Exhibit "C." Those present at the hearing were Mr. Angueira, the Chapter 7 Trustee in this case, Kevin Gleason, Esq., on behalf of Moshe Enbar and Amanda Peterson, Esq., on behalf of Michele Goodstein. The purpose of the hearing was to approve the "agreement between the trustee and the debtor." See, Docket No. 32, at Exhibit "C" at 3. This agreement, according to the Court transcript, "would have no affect on other parties, creditors, or interested parties in regard to Mr. Enbar." See, Docket No. 32, at Exhibit "C" at 3. At the time of the hearing, no one objected to the limitations contained in the motion to approve the stipulation and it was made clear that only the "trustee would be bound by the terms of the stipulation as far as the debtor, related parties, interested parties…" See, Docket No. 32, at Exhibit "C" at 3. The Court went further to articulate this limitation so that there could be no question as to the limited scope of the settlement that was being entered into. In that regard, the Court made it clear  that, "if this order is granted it would have no affect on the

6

rights of [Michele Goodstein]." See, Docket No. 32, at Exhibit "C" at 4. With no objections to this limitation, Mr. Angueira was directed by the Court to draw the order, spelling out again that, "this is a settlement between the trustee and Mr. Enbar, and has no affect or impact upon any of the rights of any parties, interested parties, creditors, claimants, whatever." See, Docket No. 32, at Exhibit "C" at 5.

Accordingly, to be charitable, Plaintiffs' continued claim that this Settlement barred the Goodsteins' right to seek to initiate and prosecute claims in the New York Action are misguided at best. Given the fact that Plaintiffs' current counsel was present at the hearing, it is difficult to understand how he believes that the adversary proceeding and this instant appeal has any legitimacy. The Bankruptcy Court could not have provided more clarity than it did on this matter--the Settlement has no effect on the rights of the Goodsteins.

Putting aside these express limitations, the Goodsteins' causes of action to which Plaintiffs herein seek to preclude Defendants from pursuing in the New York Action belongs solely to them and, therefore, the trustee would not have even have had standing to assert or release this cause of action through the Settlement. *See*, *In re Flagship Healthcare, Inc.,* 269 B.R. 721, 727 (Bankr. S.D. Fla. 2001) ("the only causes of action belonging to the debtor at the commencement of the case are property of the estate that a trustee can pursue… thus, if a specific cause of action is not property of the estate, a trustee has no authority to bring such an action… there

is no statutory authority [under which] a trustee may collect money not owed to the estate… a trustee ha[s] no standing to assert claims on behalf of specific creditors of a debtor.")

In order to determine whether or not a trustee has standing to sue, and therefore could seize control over a cause of action, a court looks to the complaint and the damages being alleged by the creditors. If, as in the New York Action at issue, the damages were suffered by the creditors and not the debtor, the trustee cannot pursue the cause of action. *See*, *Hirsch v. Arthur Anderson & Co.,* 178 B.R. 40, 44 (D.Conn. 1994) (ruling that the defendant's conduct in recommending the purchase of unworthy properties caused damage to the creditors, not the debtor… and therefore the trustee could not pursue a cause of action.) Another key to understanding whether or not the trustee has this standing is determining whether the creditor alleges a particularized injury which would not be a general one which could have been brought by any creditor. *Shafferman v. Queens Borough Pub. Library (In re JMK Constr. Grp., Ltd.)*, 502 B.R. 396, 404 (Bankr. S.D.N.Y. 2013). A cause of action is "considered personal if there is injury to only one or a select group of specific creditors, and other creditors have no interest in the action." *In re Cabrini Med. Ctr.,* 2012 WL 2254386, at *7 (Bankr. S.D.N.Y. June 15, 2012). A court may consider multiple factors when deciding whether or not an injury was personal to a specific creditor, including:

> To whom any allegedly breached duty was owed; what was the injury underlying the claims; who suffered the injury; who would gain from the recovery, or lose out if the recovery were awarded to a different successful plaintiff; and, to the extent different from any of the foregoing, whether any creditor of the debtor could assert the claim… or just those creditors suffering a particularized injury.

*Buchwald v. The Renco Grp., Inc. (In re Magnesium Corp. of Am.)*, 399 B.R. 722, 758 (Bankr. S.D.N.Y. 2009).

As indicated, the New York claims belong solely to the Goodsteins and has stood unaffected by the Settlement and never belonged to the Trustee to begin with, as was made explicitly clear by this Court. The fact that the Stipulation states that the Bankruptcy Court "shall retain sole and exclusive personal and subject matter jurisdiction over the Parties and the subject matter, interpretation, effectuation, and enforcement of the terms of the Stipulation" does not affect the Goodsteins' cause of action because that cause of action was never intended to be governed by or addressed by said Stipulation. Consequently, Plaintiffs' claim and the relief sought is made in complete disregard to the contours of the settlement that was approved by this Court, as reflected in the September 19, 2017 transcript.

Finally, and perhaps most telling, Plaintiffs have themselves sought relief in the New York Court regarding this matter. Not surprisingly, the only time Plaintiffs have sought to claim that the New York Court lacked the jurisdiction to "interpret" the Settlement Agreement, was after they sought relief from the New York Court

9

with respect to said agreement and then received an unfavorable decision from the New York Court. Such actions go beyond blatant forum shopping and borders on abuse of process.

The simple fact remains that the Order approving the Stipulation was explicit in that it had no effect on the rights of any creditors, including the Goodsteins. The Bankruptcy Court was correct when it noted same, and when it went on to state that "the New York state court appropriately determined the exact same from the *unambiguous* language in this Court's Order." See, Docket No. 43.

## POINT II

### THE COURT WAS CORRECT IN HOLDING THAT THE BANKRUPTCY COURT HAD NO AUTHORITY TO RELEASE THE GOODSTEINS' CLAIMS

The Bankruptcy Court, in denying Plaintiffs' motion and dismissing the Adversary Proceeding, goes on to state that the Stipulation "does not, and cannot, extinguish the Defendants' claims against non-debtor Plaintiffs for the alleged fraudulent transfer of funds from the LLC. The LLC was not a party to the bankruptcy proceeding, and the Court had no authority to release the Goodsteins' or the LLC's claims against the non-debtor Plaintiffs concerning the transfer of funds from the LLC to them." See, Docket No. 43 at p. 8. The Court went on to correctly point out that "the trustee's authority extended only to property of the Debtor's estate, not property belonging to the LLC or the Goodsteins." See, Docket No. 43 at

10

p. 8. *citing*, *In re Flagship Healthcare, Inc.*, 269 B.R. 721, 727 (Bankr. S.D.Fla. 2001).

Plaintiffs seek to get around this ruling by arguing that "creditors are precluded from independently pursuing causes of action settled by a bankruptcy trustee." *See*, Defendants Brief p. 15, *citing*, *In re Zwirn*, 362 B.R. 536, 542 (Bankr. S.D. Fla. 2007). Plaintiffs correctly note that, under normal circumstances, the trustee has the exclusive jurisdiction to commence fraudulent conveyance actions. However, this is only true for the first two years after a petition is filed. Outside of that time period, other creditors also have the right to bring such an action pursuant to Bankruptcy Code 546. *See*, *In re C.D. Jones & Co. Inc.* 482 B.R. 449, 459-60 (Bankr. N.D. Fla 2012) *citing*, *Zwirn, supra* and *In re Klingman*, 158 B.R. 109, 113 (N.D. Ill. 1993). In *C. D. Jones & Co., supra.*, the debtor, CD Jones & Company, Inc. ("Jones") entered into a business transaction with the creditors, the Daakes. *Id.* at 452. A dispute arose between the parties, and in 2004 the Daakes sued the debtor for *inter alia*, breach of contract. *Id.* The Daakes were successful at trial and obtained a verdict in its favor in July of 2009. The Debtor filed its Chapter 7 petition on July 30, 2009, which was after the jury verdict but was prior to the Final Judgment being signed by the Court. *Id.* The Daakes were the Debtor's largest unsecured creditor. *Id.* The Debtor's original "founders, principals and co-owners were Dennis and Cynthia Jones." *Id.* At some point during the litigation, Dennis and Cynthia Jones

transferred their ownership interests in the Debtor to their son and his partner. *Id.* In April of 2007, the Debtor completed a transaction with the son and partner that resulted in the partner becoming the Debtor's sole remaining shareholder. *Id.*

The *Jones* Trustee was appointed on July 31, 2009. *Id.* The Trustee never filed any fraudulent conveyance actions. *Id.* As of June 2012, "after the expiration of the time provided under Section 546(a), but without notice to or consent by the Trustee, the Daakes filed a new law suit in state court against Dennis Jones, as Trustee of the "Jones Trust", and the fiancée of the Joneses' son. *Id.* at 453. Therein, the Daakes alleged that while Dennis and Cynthia Jones still owned their shares in the Debtor, they made various fraudulent transfers to the Jones Trust and the fiancée. *Id.*

The *Jones* Court, in rejecting the Debtor's attempt to dismiss the state court action, held as follows:

> [a]ny claims asserted in state court that belonged to the Debtor prepetition are Section 541 property of the bankruptcy estate that the Chapter 7 Trustee has standing to pursue. Any recovery from state court fraudulent transfer claims became property of the estate by virtue of Section 544(a) and the Trustee had exclusive standing to pursue such claims *until the expiration of the limitations period of Section 546(a)*, at which point the [Plaintiffs] also had standing to pursue such claims. Whether the Trustee no longer has standing to pursue fraudulent transfer claims is an issue for the state court to decide.

*Id.* at 452.

At bar, the Debtor's petition in Bankruptcy was filed on August 16, 2016.

Since this filing, the Trustee has not sought to commence any actions against the non-debtor Plaintiffs. As it has been more than two years since the filing of the Petition, the Trustee no longer has the *exclusive* jurisdiction to bring a fraudulent conveyance action or for any other claims, such as those claims asserted in the New York Action. As such, any suggestion that the Trustee currently has exclusive jurisdiction to assert such claims lacks merit.

Finally, the claims being asserted against the Plaintiffs in the New York Action do not sound in "fraudulent conveyance" per se and therefore cannot be subject to an Automatic Stay. As found by the New York Court in analyzing same, it held

> [a] bankruptcy court will stay proceedings against non-bankrupt co-defendants in the 'unusual situation' where 'there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor.

See, Docket No. 32 at Exhibit D, *citing*, *A.H. Robins Co., Inc. v. Piccinin*, 788 F2d 994, 999 (4th Cir. 1986). Specifically, the New York Court noted that it was not

> persuaded that plaintiffs' original claims against Maurice are so intertwined with the current claims that the automatic stay in the Bankruptcy Proceeding encompasses this action. An action claiming breach of contract and conversion as against one party is quite different from a suit alleging the fraudulent transfer of assets to and among the settling parties of a bankruptcy proceeding and other nonparty entities. Here, as in *Madoff*, 'the non-debtor's

13

> liability rests upon [their] own breach of duty,' namely the alleged fraudulent transfers of funds now held in the bank accounts of Magnum Realty, and by Linda to family trusts for the benefit of the family, and the bankruptcy stay is not at issue (*Madoff* at 68). Notably, the trustee specifically stated that he had found no evidence that Maurice had transferred or concealed property '*within one year* before the date of the filing of the petition' (NYSCEF Doc. No. 150, Bankruptcy Proceeding, motion to approve stipulation paragraph 8 [emphasis added]), and although the trustee investigated "transactions" related to Turnberry and 345 Broadway, and the Laura Enbar Asset Trust and the "Lawrence Enbar Trust" (see NYSCEF Doc No. 150, Bankruptcy Proceeding, motion to approve Stipulation, paragraph 12), it is unclear whether the 'Lawrence Enbart Trust' examined by the trustee is the 'Enbar Lawrence Trust,' identified throughout plaintiffs' papers as allegedly consisting of both pieces of real property.

See, Docket No. 32 at Exhibit D, p. 20.

In *Securities Investor Protection Corporation v. Bernard L. Madoff Investment Securities LLC*, 490 B.R. 59 (S.D.N.Y. 2013), the *Madoff* Court held that non-fraudulent conveyance causes of action such as those in the New York action, do not get estopped, notwithstanding bankruptcy proceedings. In *Madoff*, the bankruptcy trustee claimed that the plaintiffs, who had brought suit against four non-debtor investment funds which were related to Bernard Madoff's company ("BLMIS"), were subject to the automatic stay. The trustee sought "the return of certain fraudulent conveyances allegedly transferred from BLMIS" to the defendants, and argued that "a third-party action to recover fraudulently transferred property is properly regarded as undertaken 'to recover a claim against the debtor'".

*Id.* at 67. The *Madoff* court ruled that the proposed settlement between the parties did not violate the automatic stay, as the plaintiffs' claims were "separate and distinct" from the claims of the BLMIS estate and not the property of the BLMIS estate. *Id.* Where, as is the case at bar, the "non-debtor's liability rests upon his own breach of duty, a stay clearly cannot be extended to the non-debtor." *Id.* at 68. This analysis was adopted by the Bankruptcy Court in properly deciding the underlying motion.

Further, "[t]he automatic stay can apply to non-debtors, but normally does so only when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate." *Queenie, Ltd. V. Nygard Intl.*, 321 F.3d 282, 287 (2d Cir. 2003). At bar, there have been no allegations that there will be any economic consequence for the debtor's estate whatsoever, should the New York action be correctly permitted to continue.

### POINT II

### THE BANKRUPTCY COURT DID NOT DEFER TO THE NEW YORK COURT, IT SIMPLY REACHED THE SAME, INESCAPABLE CONCLUSION

Plaintiffs go on to argue, with no authority, that the Bankruptcy Court should not have deferred to the New York Court. First, Plaintiffs fail to state where they believe the Bankruptcy Court "deferred" to the New York Court in any way. Rather,

the Bankruptcy Court simply agreed with the New York Court's ruling as to the clear and unambiguous meaning of the Stipulation. *See*, Docket No. 43.

In an attempt to avoid the preclusive effect of the New York Decision and Order on this issue, Plaintiffs argue that the Bankruptcy Court has exclusive jurisdiction to interpret the settlement agreement reached between themselves and the non-debtor Enbar entities and the Chapter 7 trustee with respect to ancillary claims. Notably, the trustee settlement *expressly* provided that creditors were not bound by the agreement. *See*, Exhibit "B". Bankruptcy courts, as courts of limited jurisdiction, may exercise subject matter jurisdiction on two grounds: i) ancillary jurisdiction, and ii) statutory jurisdiction under 28 U.S.C. Section 1334. Here, only the first basis is relevant.

In *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994), the Supreme Court held that federal courts may assert ancillary jurisdiction for two separate, though sometimes related purposes: 1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent, and 2) to enable a court to function successfully, to manage its proceedings, vindicate its authority, and effectuate its decrees.  Absent retention of jurisdiction over a settlement, "enforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction." *Id.*  The Order approving the settlement must either expressly retain jurisdiction over the agreement or incorporate

the terms of the agreement in the order. *Id.* Here, while the Bankruptcy Court retained jurisdiction over the settling parties and interpretation of the trustee stipulation, the stipulation was specifically crafted so as not to be binding on any creditors or otherwise affect the rights of any creditors of the Estate.  It therefore follows: 1) this Court has no independent basis to hear or otherwise stay the Goodsteins' New York action, 2) the stipulation did not incorporate or otherwise release claims between the Goodsteins and non-debtor entities, 3) the Court did not retain jurisdiction over claims between creditors of the Estate and non-debtor entities, 4) the resolution of the Goodsteins New York action will have no impact on the administration of the Estate or distribution to creditors of the Estate.

In *In re Valdez Fisheries Development Assoc., Inc.*, 439 F.3d 545 (9th Cir. 2006), in ruling that the dismissal order did not retain jurisdiction or incorporate the terms of the settlement agreement and the court lacked post-dismissal ancillary jurisdiction, the Court was asked to decide whether a bankruptcy court, which had approved a settlement agreement, had jurisdiction to interpret that agreement in an adversary proceeding between two creditors brought after the closing and dismissal of the underlying bankruptcy case. The 9th Circuit determined that the bankruptcy court's review of the release of a creditor's state court claims against another creditor could not "conceivably alter the debtor's rights, liabilities, options, or freedom of actions, or in any way impact upon the handling of the administration of the

bankruptcy estate" and, therefore, the bankruptcy court lacked ancillary jurisdiction to enforce the agreement (quoting *In re Hanks*, 182 B.R. 930 (Bankr. N.D. Ga. 1995) ((the enforcement of the settlement agreement cannot have a conceivable effect on the bankruptcy case as no case is in existence at that time)).

Here, Enbar received his discharge; claims of all creditors have been discharged, with the determination of dischargeability as to the Goodsteins claims the only remaining issue in the case. The "administration" of this case has long been completed. The Goodsteins prosecution of their fraudulent transfer claims against the non-debtor Enbar entities has no impact on any distribution to Enbar's creditors or the administration of the Estate; the outcome of the NY action will have no bearing on distributions to creditors of this Estate. Thus, the Bankruptcy Court has no role in the resolution of the Goodsteins fraudulent transfer claims against the non-debtor entities. The stipulation with the trustee has been fully implemented; the stipulation specifically provides that the claims of creditors and other parties are not impacted by the settlement. Had the non-debtor entities removed the New York Action to the Bankruptcy Court prior to the discharge being entered, then the Bankruptcy Court may have, in its discretion, taken jurisdiction of that action. See, *Valdez Fisheries* at 549. Instead, the non-debtor Enbar entities chose to litigate the New York action, the New York Court issued an extensive opinion that the action is not stayed because of the Enbar bankruptcy; and Enbar and his family members are

now attempting an end-around, forum shop to see if they can get this Court to stay the New York action.

Thus, the question of whether the Bankruptcy Court maintains jurisdiction over the interpretation of the trustee settlement agreement is necessary in order to maintain its authority is not at issue herein. The stipulation already carved out claims of creditors and specifically recites that the settlement has no effect on creditors. There is nothing left to administer in the bankruptcy case and the continued prosecution of the New York action against the non-debtor entities has no impact on Enbar, the Estate or other creditors of the Estate, all of whom are now discharged. *See, In re FedPak Sys., Inc.*, 80 F.3d 207 (7th Cir. 1995) (the bankruptcy court did not have jurisdiction to interpret its own order when resolution of the dispute would not affect the amount of assets available for distribution to creditors of the estate). *See, In re Conseco*, *Inc.*, 305 B.R. 281 (Bankr. N.D. Ill. 2004) (court could not assert 'related to' jurisdiction as this was a dispute between creditors brought three months after almost all of the assets of the estate were distributed; resolution of the case will not affect the amount of assets for distribution from the estate or the allocation of estate assets between the plaintiffs and defendants-it will have no tangible impact on the estate and is precisely the type of "internecine conflict" which the court does not have jurisdiction); *see, also, Zerand-Bernal Group, Inc. v. Cox*, 158 B.R. 459 (Bankr. N.D. Ill. 1993) (ancillary jurisdiction applied only in unusual circumstances

and is strictly limited to cases in which the non-bankruptcy forum cannot provide adequate relief).

## **CONCLUSION**

Wherefore, Defendants respectfully request that this Court affirm the Decision of the Bankruptcy Court, and for such other and further relief as this Court may deem just and proper.

Respectfully,

**WEG & MYERS, P.C.**
52 Duane Street, 2nd Floor
New York, New York 10128
Tel: (212) 227-4210
E-mail: jmallin@wegandmyers.com

BY:  /s/ Joshua L. Mallin
        Joshua L. Mallin, Esq.
(*pro hac vice*)

*and local counsel*
**SIEGFRIED RIVERA**
201 Alhambra Circle, 11th Floor
Coral Gables, FL 33134
Telephone: 305-442-3334
Fax: 305-443-3292
jberlowitz@siegfriedrivera.com
By:  /s/ Jeff Berlowitz
                Jeff Berlowitz, Esq.
Florida Bar No. 0963739